UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES A. KING, D.O.,

    Plaintiff,                      Case No.: 09-13761
                                              Hon. Nancy G. Edmunds
v.                                       Magistrate Judge Mark A. Randon

PENNSYLVANIA LIFE
INSURANCE COMPANY,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
COMPEL AS IT RELATES TO SPOLIATION SANCTIONS (DKT. NO. 30)**

This is a disability insurance coverage dispute on remand from the Sixth Circuit. Defendant Pennsylvania Life Insurance Company's ("Penn Life") motion to compel is pending (Dkt. No. 30). Judge Nancy G. Edmunds referred the matter to this Magistrate Judge for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A) (Dkt. No. 31).

The issues raised in the motion have been resolved with one exception[1]: Penn Life seeks an adverse inference sanction for spoliation of evidence. Specifically, Penn Life alleges that Plaintiff negligently lost radiographs of Plaintiff's brain from 1977, cited by Plaintiff's expert in a supporting affidavit, and critical to Plaintiff's claims. The issue has been fully briefed (Dkt. Nos. 30, 35, 36 and 38); oral argument was heard on September 11, 2012. Because Penn Life has not established that Plaintiff ever had control of the missing 1977 radiographs, its request for an adverse inference sanction is **DENIED**.

---

[1] This Magistrate Judge orders Plaintiff to sign the medical authorizations at issue, if he has not already done so.

## I.  BACKGROUND

The salient facts are as follows.  In 1977, Plaintiff, Dr. Charles King, then age 36, "fell in the snow" while skiing in Alta, Utah.  The next day, December 9, 1977, King suffered a stroke while riding up the chair lift.

Plaintiff's disability was covered by an insurance policy issued by Massachusetts Indemnity and Life Insurance Company ("Mass Life").  Penn Life is the successor-in-interest to Mass Life and responsible for payment of benefits due under the Policy.  Penn Life paid Plaintiff $2,500.00 per month in disability benefits until 2006, when he reached age 65.  At that time, Penn Life stopped payments under the Policy provision requiring that disability payments due to "sickness" terminate at age 65.

Plaintiff filed suit in 2009.  He alleges that his disability was due to an "accidental bodily injury" and, therefore, under the Policy, Penn Life must pay him benefits for the rest of his life.

This case turns on whether Plaintiff's disability resulted from an "accidental bodily injury" (i.e., Plaintiff's fall in the snow – that caused him to suffer a stroke) or from "a sickness" (i.e., Plaintiff suffered a stroke – unrelated to any fall).  If Plaintiff's disability resulted from the fall, under the Policy, he is entitled to lifetime disability benefits; if from a sickness, Penn life properly terminated his benefits at age 65.

Plaintiff's theory of disability due to an "accidental bodily injury" relies heavily on the supporting affidavit of Dr. Sweet, a neuro-radiologist, which reads, in relevant part:

> I have reviewed the Complaint of Charles A.King. . .along with the CT scans and
> St. Marks medical records pertaining to Dr. King's 1977 Skiing accident in Alta,
> Utah, *including the December 9, 1977, CT Scans*.
>
> [B]ased upon the information provided to me, as above-described, as well as upon

> my years of education, training, and experience, it is my professional medical opinion that the cerebral vascular accident suffered by Dr. King in December 1977, first manifested itself on December 8, 1977, after he fell in the snow and immediately experienced numbness in his right upper extremity, lasting for approximately 15-20 minutes.
>
> [I]t is my further opinion that Dr. King's brain injury, which I believe consisted of a deep bleed in the small vessels, later became fully manifest when, on December 9, 1977, Dr. King began to exhibit right facial paralysis, right upper extremity paralysis, weakness and numbness, and related symptomatology.
>
> [I]t is my further opinion that, since Dr. King did not, prior to December 8, 1977, have any underlying symptoms or signs of an impending stroke, (e.g., blood disorders such as "Factor V," any blood thinning disorder, diabetes, renal insufficiency, congestive heart failure, hypertension, or headaches), Dr. King's brain injury was an unanticipated, sudden, spontaneous vascular accident that, based upon reasonable medical probability, occurred due to a combination of (a). Dr. King's December 8, 1977, neurological-symptoms producing fall in the snow, (b). The very high altitude at which said fall in the snow occurred, and (c). a deep bleed in the small vessels on the left side of Dr. King's brain.

(Dkt. No. 11, Ex. L) (emphasis added).

On remand, Penn Life requested that Plaintiff produce: "[a] copy of all x-rays, CT scans, angiograms, and any other radiographic records taken in connection with your December 9, 1997 stroke[, and] [a] copy of all documents you provided to all experts retained by you to give an opinion about this case, including Dr. Sweet" (Dkt. No. 30, Ex. A). In response, Plaintiff produced several documents – but not the 1977 radiographs.

Plaintiff represents that it turned over all documents – including radiographs – to Dr. Sweet, without making an inventory or retaining copies. Plaintiff also states that all of the documents and radiographs he provided to Dr. Sweet were obtained from Penn Life. Penn Life does not address this chain of custody allegation.

Since all of the requested documents were in the possession of Dr. Sweet, Plaintiff has

made inquiries to Dr. Sweet as to the whereabouts of the 1977 radiographs. But, Dr. Sweet cannot locate them. Plaintiff first represented that Dr. Sweet "has [an] independent recollection" of reviewing the 1977 radiographs but could not explain why they were missing (Dkt. No. 35, pp. 2-3). Now, Dr. Sweet states – in a supplemental affidavit – that he has an independent recollection of "reviewing the radiological studies of [Plaintiff's] brain, and the dates of such studies *could have been* November 29, 1989 (MR of brain), January 4, 1993 (MR of brain), and/or March 11, 2003 (CT of brain)" (Dkt. No. 38, Ex. 4) (emphasis added). Importantly, Dr. Sweet does not mention in his supplemental affidavit that he reviewed the 1977 radiographs. Thus, it now appears that Dr. Sweet is uncertain about the dates of radiologic studies he reviewed – or even whether the 1977 radiographs were ever in his possession.

Penn Life argues that Plaintiff's conduct constitutes spoliation and warrants an adverse inference that the "lost" 1977 radiographs did not support his claim that his disability was caused by an accidental bodily injury. Plaintiff argues that such a sanction is inappropriate because: (1) Penn Life should have the 1977 radiographs in their files; (2) the only source of medical records in the case were those provided by Penn Life; (3) Dr. Sweet was likely mistaken when he initially stated that he reviewed the 1977 radiographs (confusing them with more recent radiographs and CT scans); and the 1977 radiographs are not material to Dr. Sweet's ultimate conclusion that Plaintiff's disability resulted from an accident (Dkt. No. 38).

## II. ANALYSIS

"A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind;

4

and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  Thus, an adverse inference for evidence spoliation is appropriate if the . . . [plaintiff]  knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction.  This depends on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction." *Adkins v. Wolever*, 692 F.3d 499, 503-04 (6th Cir. 2012) (quoting *Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553, 554 (6th Cir.2010)) (quotation marks and citations omitted).  Implicit in meeting this burden of proof is that Penn Life establish that Plaintiff had control over the 1977 radiographs in the first place. *See, e.g., Goodman v. Praxair Services, Inc.*, 632 F.Supp.2d 494, 515-16 (D.Md. 2009)

     Penn Life cannot establish that Plaintiff ever had control over the missing 1977 radiographs.  Importantly, Plaintiff cannot say what documents he provided to Dr. Sweet, but only that he gave Dr. Sweet what he received from Penn Life.  The only evidence Penn Life has produced showing Plaintiff possessed the 1977 radiographs comes from Dr. Sweet's earlier affidavit, in which he states that he remembers reviewing them.  However, Dr. Sweet has now changed his position, and, if his supplemental affidavit is to be believed, it is unlikely he ever possessed the 1977 radiographs.  None of this is sufficient for Penn Life to meet its burden to establish Plaintiff's control of the 1977 radiographs.

     Of course, Dr. Sweet's confusion about what he may or may not have reviewed in reaching his conclusion, raises serious issues about his credibility and perhaps even his ultimate opinion as to the likely cause of Plaintiff's disability.  These issues are best left to Penn Life's

counsel to explore during Dr. Sweet's deposition or at trial.[2] Without more, this Magistrate Judge cannot find that Plaintiff negligently lost or destroyed the 1977 radiographs, and an adverse inference instruction is inappropriate.

### III.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Penn Life's motion to compel, to the extent it seeks spoliation sanctions, is **DENIED**.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated:  October 25, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, October 25, 2012, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5540*

---

[2] Given Dr. Sweet's supplemental affidavit, Penn Life may also file a motion *in limine* to prevent Dr. Sweet from testifying that he reviewed the 1977 radiographs in reaching his opinion.